# STATE OF MICHIGAN

# COURT OF APPEALS

KAREN HARRIS-HOLLOWAY,

Plaintiff-Appellant,

v

AT&T SERVICES INC., and GREGORY
LAURENCE CLARK,

Defendants-Appellees,

and

MEEMIC INSURANCE COMPANY,

Defendant.

UNPUBLISHED
March 23, 2017

No. 330644
Washtenaw Circuit Court
LC No. 14-000111-NI

Before: CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants, AT&T Services, Inc. and Gregory Laurence Clark, in this no-fault automobile negligence action. We affirm.

On September 10, 2012, plaintiff was driving her car eastbound on M-14 in Washtenaw County when defendant Clark, who was driving a vehicle owned by his employer, defendant AT&T Services, Inc., rear-ended plaintiff's vehicle, allegedly causing her head, neck, shoulder, arm, knee, chest and back injuries and aggravated pre-existing conditions.[1] Plaintiff alleged that Clark was liable to her for negligence, that AT&T was liable under the doctrine of respondeat superior, as Clark was acting in the course and scope of his employment when the accident occurred, and that her insurer, defendant MEEMIC Insurance Company, failed or neglected to pay plaintiff all of the personal injury protection benefits that were due and owing to her as a result of the accident. Defendants Clark and AT&T (hereafter "defendants") moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiff's injuries do not meet the statutory threshold necessary to recover under the Michigan no-fault act insurance act,

---

[1] For purposes of appeal, plaintiff focuses solely on her back injuries.

MCL 500.3101 *et seq.* Specifically, defendants claimed that plaintiff's injuries do not constitute a serious impairment of a body function. The trial court agreed and dismissed plaintiff's complaint.[2] This appeal followed.

This Court reviews de novo a trial court's decision with respect to a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Summary disposition is appropriate under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted." A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. *Dalley v Dykema Gossett*, 287 Mich App 296, 304–05; 788 NW2d 679 (2010). When deciding a motion under (C)(8), the Court accepts all well-pleaded factual allegations as true, construes them in the light most favorable to the nonmoving party, and should grant summary disposition only when the claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Id*. at 305.

Under MCR 2.116(C)(10), summary disposition may be granted if there "is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." When deciding a motion under this subrule, a court must consider the pleadings as well as affidavits, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000). The nonmoving party must produce evidence showing a material dispute of fact left for trial in order to survive a motion for summary disposition under this court rule. MCR 2.116(G)(4).

On appeal, plaintiff contends that her injuries meet the threshold necessary to sustain an action under Michigan's no-fault law and/or that there is a factual dispute about the nature and extent of her injuries such that summary disposition in defendants' favor was inappropriate. We disagree.

To recover in tort for losses suffered as the result of an automobile accident, an injured person must meet a specific statutory threshold. MCL 500.3135 sets forth that threshold as follows:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

> (2) For a cause of action for damages pursuant to subsection (1) filed on or after July 26, 1996, all of the following apply:

---

[2] Plaintiff and defendant, MEEMIC Insurance Company, settled their dispute and thus stipulated to the dismissal of plaintiff's claims against that defendant. An order was entered to that effect and MEEMIC is not a party to the instant appeal.

(a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

(*i*) There is no factual dispute concerning the nature and extent of the person's injuries.

(*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury.

\*\*\*

(5) As used in this section, "serious impairment of body function" means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life.

As stated in *McCormick v Carrier*, 487 Mich 180, 192-193; 795 NW2d 517 (2010)(quoting MCL 500.3135(2)(a)), whether a person has suffered a serious impairment of a body function is to be determined by the trial court as a matter of law if there is no factual dispute concerning the nature and extent of the person's injuries or there is such a factual dispute but "the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement." When the court may decide the threshold issue as a matter of law, it then determines "whether the serious impairment threshold has been crossed." *Id*. at 215. The *McCormick* Court explained:

The unambiguous language of MCL 500.3135(7) provides three prongs that are necessary to establish a "serious impairment of body function": (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living).

The serious impairment analysis is inherently fact - and circumstance - specific and must be conducted on a case-by-case basis. As stated in the *Kreiner* dissent, "[t]he Legislature recognized that what is important to one is not important to all[;] a brief impairment may be devastating whereas a near permanent impairment may have little effect." *Kreiner* [*v Fischer*], 471 Mich [180,] 145, 683 NW2d 611 [2004] (Cavanagh, J., dissenting). As such, the analysis does not "lend itself to any bright-line rule or imposition of [a] nonexhaustive list of factors," particularly where there is no basis in the statute for such factors. *Id.*

Accordingly, because "[t]he Legislature avoided drawing lines in the sand . . . so must we." *Id.*

Here, the trial court clearly determined that it could decide the threshold issue as a matter of law. The trial court appears to have held some sort of proceeding on April 9, 2015, with respect to defendant's motion for summary disposition. The register of actions for April 9, 2015, indicates "Motion for Summary Disposition (10:00 AM) (Judicial Officer: Conners, Timothy P.) *Deft. Motion for Summary Disposition.*" And, the trial court entered an order indicating that "Plaintiff must provide admissible evidence from a doctor treating Plaintiff that relates to an objective manifestation of injury to the September 10, 2012, accident giving rise to the above captioned matter, within fourteen (14) days of the date of entry of this Order." The same Order allowed for defendants to respondent to plaintiff's submission and reset defendants' motion for hearing to May 14, 2015.[3]

At the May 14, 2015 hearing, at which plaintiff did not appear, defense counsel stated, "Your Honor had given Plaintiff leave ah---to file---our—our motion was a—it's a threshold motion—it was based on –on lack of objective evidence and your Honor questioned Plaintiff and ah—indicated that you would give them an additional 14 days to provide---to file this information. I would then have an opportunity to respond. Um—nothing's been filed so I haven't responded to anything." The trial court responded:

> All right. You're ah—I think that your analysis that you had in writing as well as your oral argument correctly stated the law, correctly stated the factual basis for which me to—upon which for me to make a decision. I gave them the opportunity to supplement—to provide me with anything to the contrary, for whatever reason they have not availed themselves of that opportunity and on that basis your ah—motion for relief is granted.

The trial court further stated that counsel could prepare an order granting defendants' motion and could "say for the reasons stated on the record." However, the court reporter/recorder for the trial court filed a certification that there was no record to be transcribed for April 9, 2015. This discrepancy is perplexing. Given the lack of record from the April 9, 2015 proceeding and the trial court's lack of analysis at the May 14, 2015 hearing, it is unclear whether the trial court found that there was no factual dispute concerning the nature and extent of plaintiff's injuries or whether there was a factual dispute but it was not material to the determination as to whether plaintiff suffered a serious impairment of body function or permanent serious disfigurement. We are, however, able to resolve this matter on the record presented.

On appeal, plaintiff first contends that there is a factual dispute about the nature and extent of her injuries and that they are material to the degree necessary to preclude the trial court from determining whether her injuries surpassed the *McCormick* threshold as a matter of law. We disagree.

---

[3] Although the order was not entered on May 8, 2015, defendants signed their notice of intent to submit the order for entry under MCR 2.602(B)(3) on April 13, 2015.

After the accident at issue, plaintiff and defendant Clark both left the scene, neither receiving medical treatment. The next day, plaintiff presented to her primary care physician with complaints of pain in her left leg, and soreness in her neck, lower back, and left forearm. Her doctor's medical report from the date notes a history of chronic low back pain and a recent left thigh infection. In the report, plaintiff's doctor noted his suspicion that most of plaintiff's problems were soft tissue and indicated that he prescribed pain medications, would order x-rays, and would follow up in 7-10 days. Plaintiff's doctor also apparently referred her to physical therapy, which she began on October 10, 2012.

The diagnosis provided on plaintiff's physical therapy initial examination is lumbago. "Lumbago" is defined as "pain in mid and lower back." *Stedman's Medical Dictionary* (26th ed.). Under "subjective" findings, it is noted on that initial examination that plaintiff had issues with back pain in the past. It was noted that plaintiff had had many spinal cortisone injections and a spinal fusion at C4-C7, and that her prior level of function was "difficulty with pain and ADL's, self-care, ambulation/mobility." The physical therapy report further noted that plaintiff had a nerve ablation "last spring" which took care of pain, but that the accident "seems to have reproduced/woken up pain." Plaintiff's rehabilitation potential was listed as "good." Both parties rely upon and do not dispute the above documents. Notably, however, the above consist of subjective, self-reported complaints of pain on plaintiff's part, rather than an objective injury.

The thrust of plaintiff's contention regarding a dispute about her injuries stems primarily from MRI's taken of her spine. On November 8, 2012, plaintiff underwent an MRI of her lumbar spine. The impression stated on the MRI consisted of "mild lumbar spondylosis without focal disc herniation or central canal stenosis." While plaintiff contends that the post-accident MRI showed "marked differences" from a prior MRI of her spine, the report of the November 8, 2012 MRI noted that these spondylotic changes appeared "quite similar to prior study of 02/09/2011." Plaintiff points out differences between the February 9, 2011 MRI and the November 8, 2012 MRI; however, that does not change the impression or report given by the medical professional who interpreted the results of the November 8, 2012 MRI as quite similar to her prior MRI. Moreover, a similar MRI taken of plaintiff's lumbar spine on April 26, 2014, was described by a reviewing medical professional as "a fairly normal looking MRI." Based upon the above, we are satisfied that there is no factual dispute concerning the nature and extent of plaintiff's injuries such that the trial court properly decided the threshold issue of whether plaintiff suffered a serious impairment of a body function as a matter of law. *McCormick*, 487 Mich at 192-193. Thus, we next decide whether the trial court correctly determined that the serious impairment threshold had not been crossed. *Id*. at 215.

As previously indicated, to establish a "serious impairment of body function" under MCL 500.3135, a plaintiff must show (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). *McCormick*, 487 Mich at 215. Defendants presented the trial court with evidence indicating that MRI's of plaintiff's lumbar back taken before, shortly after, and a year and a half after the accident were quite similar and that the latest MRI described her MRI as "fairly normal looking." Defendants also relied upon medical records detailing

plaintiff's medical history of "chronic back pain" and upon an independent medical examination.[4]

Plaintiff submitted exhibits to the trial court, in addition to her MRI's, purportedly establishing that she met the above criteria. These exhibits consisted of (1) a disability certificate signed by a chiropractor disabling plaintiff from housework and recreational activities from October 3, 2012, through November 3, 2012; (2) A letter from the Ann Arbor Spine Center, signed by Dr. Carrie Stewart, who restricted plaintiff on September 26, 2013, to working with no repetitive bending, lifting, or twisting; no lifting over 15 pounds, and to be allowed to sit/stand/walk at will for comfort; (3) an October 7, 2013 operative report for steroid injections plaintiff received from Dr. John Chatas due to pain in her lower back and hips (4) a November 14, 2013 report from Dr. Stewart indicating that plaintiff's neck pain has improved significantly with treatment but that she has persistent pain in her lower back and that "overall she remains very functionally limited," and; (5) plaintiff's deposition testimony wherein she described her back pain after the accident and how it limited/changed her life.

Exhibits 1 & 2, above, do not provide a diagnosis or any basis for the restrictions. Having provided no indication of an objectively manifested impairment, they are of little value. Exhibit 3 is likewise of little value. While the operative report indeed shows that plaintiff received steroid injections in her back one year after the automobile accident, the surgical note indicates that the injection was given due to back and hip pain and because the recent MRI showed "narrowing at L3 and L4 bilaterally, which may be responsible for ongoing pain complaints, especially since she did not improve with the TB injections at her last visit." The recent (November 8, 2012) MRI was, as discussed above, described as "quite similar to her prior MRI" by the reviewing medical professional. It thus does not show an objectively manifested impairment as a result of the accident. Moreover, the surgical note states that the narrowing shown on the MRI *may* be responsible for ongoing pain complaints, indicating uncertainty as to the cause of plaintiff's subjective complaints of pain. Exhibit 4 similarly fails to show an objective manifestation of injury, given that it is merely a report of plaintiff's subjective complaints of pain and whether or not they had resolved or improved. Dr. Stewart's letter provides no personal observations or diagnosis with respect to plaintiff. Finally, Exhibit 5 is plaintiff's own testimony concerning life changes due to her back pain. This is subjective and self-serving and, while it may explain how her pain affected her ability to lead her normal life, this third prong of a serious impairment analysis cannot come into play absent an objective manifestation of injury. Plaintiff's subjective complaints of pain cannot, on their own, form the basis for an objective manifestation of injury. In sum, plaintiff did not provide any objective testing evidence that related any new injury to the accident.

Viewing the evidence in a light most favorable to plaintiff, there is no genuine issue of material fact that plaintiff did not suffer a "serious impairment of body function" under MCL 500.3135. Thus, summary disposition was properly entered in defendants' favor.

---

[4] An IME report was listed as an exhibit to defendant's summary disposition brief but does not appear in the lower court file.

Affirmed.

/s/ Mark J. Cavanagh
/s/ David H. Sawyer
/s/ Deborah A. Servitto